# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

––––––

Argued February 16, 2011         Decided April 8, 2011

No. 10-5282

YASEIN KHASEM MOHAMMAD ESMAIL, DETAINEE, CAMP
DELTA,
APPELLANT

v.

BARACK OBAMA, PRESIDENT OF THE UNITED STATES, ET AL.,
APPELLEES

––––––

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01254)

––––––

*Danielle S. Barbour* argued the cause for appellant. With
her on the briefs were *Alan A. Pemberton*, *Brian Foster* and
*David H. Remes*. *Marc D. Falkoff* and *S. William Livingston*
entered appearances.

*Anne Murphy*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With her on the brief were
*Douglas N. Letter* and *Robert M. Loeb*, Attorneys.

Before: TATEL and BROWN, *Circuit Judges*, and
SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Senior Circuit Judge* SILBERMAN.

PER CURIAM: Appellant, Yasein Khasem Mohammad Esmail, a detainee at the U.S. naval base in Guantanamo Bay, Cuba, was captured by Northern Alliance forces in December 2001 and transferred to American custody in January of the following year. In 2004, he filed a petition for a writ of habeas corpus with the United States District Court for the District of Columbia. The district court denied the petition, and Esmail now appeals. Because we agree with the district court's ultimate determination that Esmail was more likely than not "part of" al Qaeda at the time of his capture in December of 2001, we affirm.

Esmail challenges the district court's decision on a number of grounds. In particular, he argues that the district court erred in finding that statements he made to American interrogators in Afghanistan and at Guantanamo Bay were voluntary. He also argues that the district court erred in relying on those statements despite the government's failure to provide sufficient evidence corroborating their content. But we have no need to consider either of those issues because the record contains sufficient facts—affected neither by the alleged coercion nor by the lack of corroboration—to support the district court's conclusion that Esmail was "part of" al Qaeda at the time of his capture. *See Bensayah v. Obama*, 610 F.3d 718, 724–25 (D.C. Cir. 2010) ("[T]he [Authorization for Use of Military Force] authorizes the Executive to detain, at the least, any individual who is functionally part of al Qaeda."); *see also Barhoumi v. Obama*, 609 F.3d 416, 423 (D.C. Cir. 2010) (clarifying that in habeas appeals involving Guantanamo Bay detainees we review district court fact

findings for clear error, and we review the ultimate issue of whether the detainee was "part of" al Qaeda *de novo*).

First, Esmail, a Yemeni who traveled to Afghanistan in 1999, admits to having received weapons training at al Farouq, an al Qaeda training camp, for at least one month. Although he claims that he did not know until after he left that the camp was al Qaeda-run, the district court found this contention to be incredible, and Esmail offers us no basis to question that fact finding. *See Awad v. Obama*, 608 F.3d 1, 7 (D.C. Cir. 2010) ("A finding is clearly erroneous when . . . the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." (internal quotation marks omitted)). We have observed that training at al Farouq or other al Qaeda training camps is compelling evidence that the trainee was part of al Qaeda. *See Al-Adahi v. Obama*, 613 F.3d 1102, 1109 (D.C. Cir. 2010) (suggesting, but not relying on, the proposition that such evidence would be sufficient on its own); *see also Al-Bihani v. Obama*, 590 F.3d 866, 873 n.2 (D.C. Cir. 2010). The length of Esmail's training—at least a month—makes this particularly strong evidence. *Cf. Al-Adahi*, 613 F.3d at 1108 (noting that the detainee was at al Farouq for only seven to ten days).

Second, Esmail admits to having studied at the al Qaeda-affiliated Institute for Islamic/Arabic Studies. Although the district court found this fact, on its own, not to be strong evidence, *see Abdah v. Obama*, 709 F. Supp. 2d 25, 44 (D.D.C. 2010), it is relevant and, when viewed in light of the remainder of the evidence, makes it more likely that Esmail was "part of" al Qaeda. *See Al-Adahi*, 613 F.3d at 1105–09 (describing the importance of considering each fact in light of the remainder of the evidence).

Third, although Esmail contests precisely where he was taken into custody by the Northern Alliance (he asserts it occurred in Jalalabad while the government argues it occurred in a village near Tora Bora, a cave complex in the mountains of Eastern Afghanistan), he does not contest that he passed through Tora Bora in December of 2001 or that when he was taken into Afghan custody, he was with two other men, both of whom had participated in the fighting and one of whom had been injured. Seeking to explain these movements, Esmail claims that after September 11, when he was in Kandahar, he wanted to return to Yemen, but rather than retrace the route he had taken from Yemen to Afghanistan in 1999, he headed north to Kabul, where he claims he planned to meet and marry a Pakistani friend's sister. Once in Kabul, he adds, he was kidnapped from the street and taken to Tora Bora, where his kidnappers picked up two other men. The kidnappers then took the three of them to Jalalabad and sold them into Afghan custody. The district court, however, "was not persuaded by Esmail's attempt to paint his decision to travel from Kandahar to Kabul after September 11 as innocent" and found his allegations of kidnapping "not logical." *Abdah*, 709 F. Supp. 2d at 46–47; *cf. Al-Adahi*, 613 F.3d at 1107 (noting that a false explanation can provide further corroboration that a detainee is "part of" al Qaeda). Esmail has failed to show that this credibility determination was clearly erroneous.

As we explained in *Uthman v. Obama*, Tora Bora was a "widely known . . . battleground between al Qaeda and the United States" and travel in that region in December 2001 "suggests that [the traveler] was affiliated with al Qaeda." No. 10-5235, slip op. at 8 (D.C. Cir. Mar. 29, 2011) (internal quotation marks omitted). In that case, we also found it "highly significant" that the detainee was "captured in the company of a Taliban fighter and two al Qaeda members and

Osama bin Laden bodyguards," *id.* at 9, and could "not credibly explain[] . . . how he found himself traveling with [that group]," *id.* at 14. Likewise, we find it "highly significant" that Esmail was captured along with two fighters, one of whom had been injured in the battle, and that Esmail has offered no credible explanation either of his decision to remain in Afghanistan after September 11 or of how he ended up traveling through Tora Bora with two Tora Bora battle participants.

"Consider[ing] . . . as a whole[,]" *id.* at 14 (internal quotation marks omitted), these admissions and district court fact findings, we conclude as a matter of law that Esmail was more likely than not "part of" al Qaeda at the time of his capture. We therefore affirm the district court's denial of Esmail's petition for a writ of habeas corpus.

*So Ordered.*

SILBERMAN, *Senior Circuit Judge*, concurring: I concur in the court's per curiam opinion affirming the district court's denial of petitioner's writ. The government's evidence is easily sufficient to meet any evidentiary standard. (Indeed, I find petitioner's "story" phonier than a $4 bill.) I write separately for two reasons. First, to note that the government at oral argument agreed that even if petitioner could show he resolutely declined to "join" al Qaeda or the Taliban, and thus could not be said to be a part of either, so long as evidence showed he fought along side of al Qaeda, the Taliban, or with associated forces he would be covered by the Authorization for Use of Military Force. District courts, in that sort of case, need not strain to find a petitioner is "a part of al Qaeda." *See Hatim v. Gates*, --- F.3d ---, 2011 WL 553273, at *1 (D.C. Cir. 2011); *Awad v. Obama*, 608 F.3d 1, 9 n.1 (D.C Cir. 2010); *Al-Bihani v. Obama*, 590 F.3d 866, 871-72 (D.C. Cir. 2010).[1]

My second point, not unrelated to the first, goes to the unusual incentives and disincentives that bear on judges on the D.C. Circuit courts – particularly the Court of Appeals – charged with deciding these detainee habeas cases. In the typical criminal case, a good judge will vote to overturn a conviction if the prosecutor lacked sufficient evidence, even when the judge is virtually certain that the defendant committed the crime. That can mean that a thoroughly bad person is released onto our streets, but I need not explain why our criminal justice system treats that risk as one we all believe, or should believe, is justified.

When we are dealing with detainees, candor obliges me to admit that one can not help but be conscious of the infinitely greater downside risk to our country, and its people, of an order

---

[1] Of course, "the purely independent conduct of a freelancer" – one who does not fight alongside of, or actively support, al Qaeda, the Taliban, or an associated force – "is not enough" to justify detention. *Bensayah v. Obama*, 610 F.3d 718, 725 (D.C. Cir. 2010).

releasing a detainee who is likely to return to terrorism. One does not have to be a "Posnerian" – a believer that virtually all law and regulation should be judged in accordance with a cost/benefit analysis – to recognize this uncomfortable fact.

That means that there are powerful reasons for the government to rely on our opinion in *Al-Adahi v. Obama*, 613 F.3d 1102 (D.C. Cir. 2010), which persuasively explains that in a habeas corpus proceeding the preponderance of evidence standard that the government assumes binds it, is unnecessary – and moreover, unrealistic. *Id.* at 1104-05. I doubt any of my colleagues will vote to grant a petition if he or she believes that it is somewhat likely that the petitioner is an al Qaeda adherent or an active supporter. Unless, of course, the Supreme Court were to adopt the preponderance of the evidence standard (which it is unlikely to do – taking a case might obligate it to assume direct responsibility for the consequences of *Boumediene v. Bush*, 553 U.S. 723 (2008)). But I, like my colleagues, certainly would release a petitioner against whom the government could not muster even "some evidence."

Of course, if it turns out that regardless of our decisions the executive branch does not release winning petitioners because no other country will accept them and they will not be released into the United States, *see Kiyemba v. Obama*, 605 F.3d 1046, 1048 (D.C. Cir. 2010); *Kiyemba v. Obama*, 561 F.3d 509, 516 (D.C. Cir. 2009), then the whole process leads to virtual advisory opinions. It becomes a charade prompted by the Supreme Court's defiant – if only theoretical – assertion of judicial supremacy, *see Boumediene*, 553 U.S. 723, sustained by posturing on the part of the Justice Department, and providing litigation exercise for the detainee bar.