# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 18-5148

September Term, 2017

1:04-cv-01194-UNA

**Filed On:** August 14, 2018

Khalid Ahmed Qassim,

      Appellant

      v.

Donald J. Trump, President of the United
States, et al.,

      Appellees

**BEFORE:**    Garland, Chief Judge; Henderson, Rogers**, Tatel**, Griffith, Kavanaugh*, Srinivasan, Millett, Pillard, Wilkins, and Katsas*, Circuit Judges

## O R D E R

Upon consideration of appellant's petition for initial hearing en banc, the response thereto, and the reply; appellees' motion for leave to file a surreply and the lodged surreply; and the absence of a request by any member of the court for a vote on the petition, it is

**ORDERED** that the motion for leave to file a surreply be granted. The Clerk is directed to file the lodged document. It is

**FURHTER ORDERED** that the petition for initial hearing en banc be denied.

### Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY:   /s/
Ken Meadows
Deputy Clerk

* Circuit Judges Kavanaugh and Katsas did not participate in this matter.
** A statement by Circuit Judge Rogers, concurring in the denial of initial hearing en banc, is attached to this order.
** A statement by Circuit Judge Tatel, concurring in the denial of initial hearing en banc, is attached to this order.

**No. 18-5148**                              **September Term, 2017**

ROGERS, *Circuit Judge*, concurring in the denial of initial hearing *en banc*: Petitioner seeks initial *en banc* review contending that since the Supreme Court's decision in *Boumediene v. Bush*, 553 U.S. 723 (2008), holding that detainees in the military prison at Guantanamo Bay are "entitled to the privilege of habeas corpus to challenge the legality of their detention," *id.* at 771, and that a "habeas court must have the power to order the conditional release of an individual unlawfully detained," *id.* at 779, opinions by this Court have "effectively nullified *Boumediene*," Pet. 4. Petitioner states that he seeks initial *en banc* review because "panel decisions have created a hollow habeas regime that leaches all substance out of the Supreme Court's governing precedents and effectively shuts down habeas corpus as a remedy for any Guantanamo detainees." Pet. 4-5. Indeed, members of the Court have expressed concern that the law of this circuit has "compromised the Great Writ as a check on arbitrary detention," *Kiyemba v. Obama*, 555 F.3d 1022, 1032 (D.C. Cir. 2009) (Rogers, J., dissenting in part and concurring in part), and "has stretched the meaning of the [Authorization for Use of Military Force] and the [National Defense Authorization Act] so far beyond the terms of these statutory authorizations that habeas proceedings . . . afforded [to detainees] are functionally useless," *Ali v. Obama*, 736 F.3d 542, 553-54 (D.C. Cir. 2013) (Edwards, J., concurring in the judgment); *see also Hussain v. Obama*, 718 F.3d 964, 972 (D.C. Cir. 2013) (Edwards, J., concurring in the judgment); *Latif v. Obama*, 677 F.3d 1175, 1206 (D.C. Cir. 2012) (Tatel, J., dissenting); *Abdah v. Obama*, 630 F.3d 1047 (D.C. Cir. 2011) (statement by Griffith, J., joined by Rogers, J., Tatel, J., dissenting from the denial of rehearing en banc). Because a panel is bound by existing circuit precedent, *see LaShawn A. v. Barry*, 87 F.3d. 1389, 1397 (D.C. Cir. 1996), petitioner's initial *en banc* request is not unreasonable. Nonetheless, in the ordinary course, initial panel review would assist the Court in evaluating the merits of the habeas petition. *See, e.g., infra* Concurring Statement by Judge Tatel.

**No. 18-5148**                                        **September Term, 2017**

TATEL, *Circuit Judge*, concurring in the denial of initial hearing en banc: In *Boumediene v. Bush*, 553 U.S. 723 (2008), the Supreme Court held that the Suspension Clause guarantees detainees held under executive authority at the United States Naval Station at Guantánamo Bay the right to petition federal courts for "meaningful review of both the cause for detention and the Executive's power to detain," *id.* at 783. Observing that some detainees had "been in custody for six years with no definitive judicial determination as to the legality of their detention," *id.* at 797, the Court declared that "the costs of delay [could] no longer be borne by those who are held in custody," *id.* at 795. Six years have become sixteen, and the prospect of relief remains largely illusory. As petitioner here points out, when it comes to Guantánamo, this court has reversed each and every recent grant of habeas relief it has considered on the merits. *See* Pet. 4. Petitioner believes something has gone awry in this court's jurisprudence, and I agree that the en banc court has reason to consider whether we have faithfully implemented *Boumediene*'s holding.

This case, however, gives us no occasion to do so at present. Petitioner asks us to take the extraordinary step of revisiting several circuit precedents before either the district court or an appellate panel has had an opportunity to consider how those precedents apply to the evidentiary record in this case. Indeed, petitioner has attempted to short-circuit the factfinding process altogether by stipulating that at least three circuit precedents *mandate* the denial of habeas relief when applied to this record.

According to petitioner, two of these cases, *Al-Adahi v. Obama*, 613 F.3d 1102 (D.C. Cir. 2010), and *Al-Bihani v. Obama*, 590 F.3d 866 (D.C. Cir. 2010), divest the district court of its role as factfinder by requiring that "certain government evidence . . . be given decisive weight." Pet. 12; *see also id.* at 14 (reading these cases to establish that "the government's 'reasonable belief' that a detainee visited a guest house frequented by Al Qaeda or the Taliban, or attended a training camp, is sufficient by itself to justify continued detention" and that "[n]o further inquiry by the district court is . . . permitted"). Petitioner is mistaken. As the government itself concedes, those decisions "speak only to the probative value" of certain evidence, and nothing in them treats "the government's reasonable belief alone . . . as decisive or conclusive." Resp. 6. Whatever else *Al-Adahi* and *Al-Bihani* might stand for, in other words, they do not create a *per se* rule that the presence of any particular evidence—let alone the specific mix of record evidence presented here—requires any particular factual finding or legal conclusion.

To be sure, the third case, *Latif v. Obama*, 677 F.3d 1175 (D.C. Cir. 2012), which affords a presumption of regularity to an intelligence report despite the district court's finding "a serious question as to whether [it] accurately reflect[ed] [the subject's] words," presents a more formidable obstacle, *id.* at 1206 (Tatel, J., dissenting) (quoting *Abdah*

*(Latif)* v. *Obama*, No. 1:04-cv-01254, 2010 WL 3270761, at *9 (D.D.C. July 21, 2010)). But this is not, as petitioner seems to believe, because *Latif* requires courts to "defer to the Executive's . . . version of the facts." Pet. 14. Indeed, as the government recognizes, "*Latif* emphasized that the presumption 'implies nothing about the truth of the underlying non-government source's statement' and 'does not compel a determination that the record establishes what it is offered to prove.'" Resp. 8 (quoting *Latif*, 677 F.3d at 1180–81). What the government leaves unacknowledged, however, is the central problem with *Latif*: it requires courts to presume the accuracy, albeit not the truth, of documents "produced in the fog of war by a clandestine method that we know almost nothing about"—just as they presume the accuracy of, say, ordinary "tax receipts"—and thus unjustifiably shifts the burden of proof to the detainee. *Latif*, 677 F.3d at 1208 (Tatel, J., dissenting). Given that we know so little about the "highly secretive process" for producing such documents and that "we have no basis on which to draw conclusions about the general reliability of its output," *id.* at 1209, this court should, at the appropriate time, reconsider whether these documents merit the presumption that *Latif* affords them, especially given the potentially grave consequences of inaccuracy, *see Al Mutairi v. United States*, 644 F. Supp. 2d 78, 84 (D.D.C. 2009) (noting that the government maintained "for over three years" that a detainee "manned an anti-aircraft weapon in Afghanistan based on a typographical error in an interrogation report").

Ultimately, however, *Latif*'s implications for petitioner's case would also benefit from initial review by a panel of this court and, likely, factfinding by the district court. Although the record contains documents that I believe, for the reasons I gave in *Latif*, merit no presumption of accuracy, the district court might yet conclude "after careful scrutiny" and after consulting corroborating evidence present here but lacking in *Latif* that some of those documents "are reliable," regardless of any presumption. *Latif*, 677 F.3d at 1209 (Tatel, J., dissenting). Until the district court has had the opportunity to assess the record as a whole in the first instance, intervention by the en banc court is unwarranted.